**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **DAVID H. CHASTAIN, ELIZABETH CHASTAIN JOHNSON, JOSEPH DOCK CHASTAIN, AND JERRY L. CHASTAIN, JR.,** | * * * * * | |
| **Plaintiffs,** | * * | |
| **v.** | * * | **CASE NO: 1:25-CV-00273-JB-MU** |
| **SRM MATERIALS, LLC,** | * * | **JURY TRIAL DEMANDED** |
| **Defendant.** | * | |

---

## FIRST AMENDED COMPLAINT

---

The plaintiffs, David H. Chastain, Elizabeth Chastain Johnson, Joseph Dock Chastain, and Jerry L. Chastain, Jr. ("Plaintiffs"), file this First Amended Complaint against the defendant, SRM Materials, LLC ("SRM"), and, in support thereof, states the following:

## COMPLAINT

1. Plaintiff David H. Chastain is adult resident of Clarke County, Alabama.

2. Plaintiff Elizabeth Chastain Johnson is an adult resident of Baldwin County, Alabama.

3. Plaintiff Joseph Dock Chastain is an adult resident of Lane County, Oregon.

4. Plaintiff Jerry L. Chastain, Jr. is adult resident of Clarke County, Alabama.

5. SRM is a Tennessee limited liability company whose members are citizens of Tennessee.

6. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper, and this Court has personal jurisdiction over Defendants, because SRM is bound by contracts in which it agreed to Mobile County, Alabama being the exclusive forum for this action,[1] and because the events alleged herein giving rise to this action occurred within this District.

**Factual Allegations**

8. Plaintiffs own certain real property located in Clarke County, Alabama, along the Tombigbee River (the "Property").

9. The Property is divided into various tracts. Two such tracts are owned by Plaintiff Jerry L. Chastain, Jr. ("Jerry Chastain"); one is owned by Plaintiff David H. Chastain, Plaintiff Elizabeth Chastain Johnson, and Plaintiff Joseph Dock Chastain (collectively, the "Chastain Group"); and one is owned by Plaintiff David H. Chastain ("David Chastain").

10. In 2019, Plaintiffs entered into various leases with Bayou Materials, LLC ("Bayou Materials") under which Bayou Materials was permitted, as the lessee, to perform certain sand and gravel mining operations on certain portions of the Property.[2] Each of these leases were called an Amended and Restated Natural Aggregate Mining Lease and were between: (a) Bayou Materials and Jerry Chastain, which governed mining operations performed on his tracts (collectively, these leases are referenced herein as the "Jerry Chastain Lease"); and (b) Bayou Materials and the

---

[1] The Leases (as defined herein as attached hereto) contain the following forum selection clause in Paragraph 29:

> This Lease Agreement and all transactions contemplated by this Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of Alabama, without regard to principles of conflicts of laws. Any action or proceeding with respect hereto shall be maintained in the state or federal courts situated in Mobile County, Alabama. The parties submit to such jurisdiction and venue, waiving any claim of improper jurisdiction or venue or forum non-conveniens.

[2] The Leases, referenced herein as the Jerry Chastain Lease and Chastain Group Lease, are attached hereto as <u>Exhibits 1</u> and <u>2</u>, respectively.

Chastain Group, which governed mining operations performed on their tract (the "Chastain Group Lease") (collectively, the "Leases").

11. The Leases expressly prohibited Bayou Materials from assigning the Leases "without Lessor's prior written consent …"[3] However, on or about November 20, 2020, Bayou Materials executed assignments of the Leases to SRM (the "Assignments")[4] without obtaining prior written consent from any of the Plaintiffs as required by the Leases.

12. The parties listed in the Assignments were Bayou Materials, SRM, and the Plaintiffs.[5] However, none of the Plaintiffs have ever signed the Assignments.[6] In fact, Plaintiffs had never seen the Assignments until SRM's related entity, Smyrna Ready Mix Concrete, LLC, recently filed them as part of this legal proceeding.

13. The Assignments acknowledge that the Leases require Plaintiffs' prior written consent because the Assignments state the following:

> In consideration of the foregoing and other valuable consideration, Lessor hereby consents to the assignment and assumption of the Lease and the terms of this Agreement. Lessor acknowledges and agrees that, in the event of Lessor's execution of this Agreement prior to final execution of [Bayou Materials and SRM], Lessor may not revoke such consent.[7]

The Assignments also contained various representations and warranties by Plaintiffs,[8] but again, none of the Plaintiffs ever signed the Assignments or gave their prior written consent to them.

---

[3] *See* Leases (Exs. 1-2) at ¶ 14.

[4] Two of the Assignments, which the undersigned counsel obtained only when SRM filed them with the Court, are attached hereto as "Exhibits 3 and 4." The undersigned counsel has requested any additional assignments that exist, but SRM has not provided any.

[5] *See* Assignments (Exs. 3-4).

[6] *Id.* In fact, the Assignments that SRM filed with this Court are not signed by any of the Plaintiffs.

[7] *Id.* at ¶ 3(a).

[8] *Id.*

14. The Leases provide that all notices to be given under the Leases must be directed to certain specific individuals associated with Bayou Materials.[9] Although the Assignments attempted to modify the Leases' notice provisions, those attempted modifications were not effective because any modifications of the Leases were required to be made in writing signed by all parties to the Leases, which included Plaintiffs, who did not execute the Assignments.

15. Beginning sometime after the Assignments were executed, SRM has been present and performing mining operations on the Property. Among other things, SRM's mining operations have included, but have not been limited to, operating large trucks and heavy machinery, digging into the earth, mining sand and gravel, loading it into trucks and barges, and selling it.

16. Under the Leases, SRM is required to pay Plaintiffs both rent and royalties. Under the Jerry Chastain Lease, SRM must pay Jerry Chastain $12,000 per year as rent.[10] Under the Chastain Group Lease, SRM must pay rent to the Chastain Group in an amount equal to a percentage of gross sales:

> a. Percentage Rent. Lessee will pay to Lessor at Lessor's address, without notice, demand, counterclaim, abatement, deduction or setoff, except as may be expressly set forth in this Lease Agreement, rent (the "Percentage Rent") in an amount equal to 4.5% of the actual sales price of all Materials sold and delivered by Lessee in, at, from, or arising out of the use of the Property, whether for wholesale, retail, cash, credit, trade-in, or otherwise, including, without limitation, sales of Materials (a) originating in, at, from, or arising out of the use of the Property; (b) originating at other properties situated in Clarke County, Alabama, but involving use of the Property; or (c) that Lessee or any subtenant, licensee, concessionaire, or other person in the normal and customary course of business similar to Lessee's business would attribute to its operations on any part of the Property ("Gross Sales").[11]

---

[9] *See* Leases (Exs. 1-2) at ¶ 20.

[10] *See* Jerry Chastain Lease (Ex. 1) at ¶ 4(a). Under the Jerry Chastain Lease, he receives $6,000 per year as rent for two separate parcels, totaling $12,000 per year.

[11] *See* Chastain Group Lease (Ex. 2) at ¶ 4(a).

17. The Leases also require SRM to pay the Lessors royalty payments in amounts equal to 6% of the gross sales of materials mined and removed from the Property and sold during the normal course of SRM's operations.[12]

18. From January 2021 through the present date, SRM has failed to pay Plaintiffs rent and royalties in percentages "of the actual sales price of all Materials sold and delivered by [SRM]" as required by the Leases.

19. SRM has confirmed in writing that, from January 2021 through April 2025, its gross revenue from sales of sand and gravel mined from the Property and transported by barge was more than $18 million. However, SRM's documentation shows that it paid Plaintiffs rent and royalties in percentages of merely $5,637,602.02. This is because, instead of paying rent and royalties in percentages "of the actual sales price of all Materials sold and delivered by [SRM]" as required by the Leases, SRM chose to pay rent and royalties based on lower fabricated sales figures in violation of the Leases. For example, in March 2021, SRM mined and sold 26,848.28 tons of sand from the Property for an actual sales price of $436,284.55, which was $16.25 per ton. However, instead of paying rent and royalties in percentages of $436,284.55 (i.e., "the actual sales price of all Materials sold and delivered by [SRM]" as required by the Leases), SRM paid rent and royalties based on $2.00 per ton, which was only $53,696.56. This resulted in SRM paying rent and royalties of only $5,168.00 when they should have been $45,809.87 (i.e., $19,632.80 in rent and $26,117.07 in royalties). This was done by SRM every single month of the Leases, resulting in massive underpayments of rents and royalties.

20. Additionally, from January 2021 through the present date, SRM also mined and sold sand and gravel to trucks without ever disclosing the sales to Plaintiffs, and without ever paying Plaintiffs any rent or royalties.

---

[12] *See* Leases (Exs. 1-2) at ¶¶ 4(b).

21. Although the Leases required SRM to provide each of the Plaintiffs with monthly statements showing the quantity of materials mined and sold and the rent and royalties calculations, SRM failed to do so on a consistent basis. In those rare instances when SRM provided monthly statements, they falsely represented the sales prices and concealed the actual sales prices. In other words, instead of truthfully stating the tonnage and actual sales prices, SRM's monthly statements falsely stated that materials were sold at much lower prices. For example, in March 2025, SRM sent Plaintiffs a monthly statement that falsely stated that SRM mined and sold sand and gravel for $2.00 per ton and $10.00 per ton, respectively, for a total sales price of $135,631.02. However, in reality, SRM sold those materials for an actual sales price of $371,392.33, but did not disclose that to Plaintiffs.

22. The Leases further required SRM to "weigh the Materials mined and removed from the Property" and to "furnish barge draft measurements and accurate equipment and procedures for determining the quantities of Materials mined and removed from the Property."[13] The Leases further require SRM to comply with all laws, regulations, and ordinances, which include the obligation to weigh all mined materials using sufficient scales approved and certified by the appropriate regulatory authorities.[14] However, SRM has mined, transported, and sold Materials from the Property without using any such approved, certified, or otherwise compliant scales, and without even having any such scales available for use at the Property.

23. On May 16, 2025, Plaintiffs, through the undersigned counsel, wrote to SRM and declared it in default under the Leases.[15] In that letter, Plaintiffs' counsel stated that Plaintiffs

---

[13] *See* Leases (Ex. 1-2) at ¶ 4(b).

[14] *Id.* at ¶ 3(b).

[15] This letter is attached hereto as "Exhibit 5."

"intend to exercise their rights to terminate both Leases in the event that said defaults are not cured within 30 days of this letter."[16]

24. On May 22 and 29, 2025, SRM wrote to Plaintiffs' counsel and provided a spreadsheet containing what SRM claimed was all sales of materials mined on the Property. That spreadsheet, however, only substantiated that SRM had been underpaying rent and royalties as alleged, and had also sold sand and gravel to trucks without disclosure or payment as alleged.

25. In response to this letter, Plaintiffs' counsel wrote to SRM again on June 11, 2025, stating that "SRM remains in default of both Leases" and reiterating that Plaintiffs "will exercise their rights to terminate both Leases unless SRM cures their defaults by Sunday, June 15, 2025, which is the 30th day following my clients' May 16, 2025 notice of default."[17]

26. As of Monday, June 16, 2025, SRM still had not cured their defaults. Consequently, that evening, Plaintiffs' counsel wrote to SRM terminating the Leases and all other related contracts between the parties.[18] When doing so, Plaintiffs' counsel stated that "SRM is hereby demanded to immediately cease and desist all mining operations."[19]

27. SRM, however, did not cease and desist its mining operations.

28. Under the Leases, upon termination of the Leases by Plaintiffs, SRM is prohibited from conducting any further mining operations on the Property and is only permitted to enter, access, or be present on the Property for the purpose of removing its machinery and equipment.[20]

---

[16] *Id.*

[17] This letter is attached hereto as "Exhibit 6."

[18] This letter is attached hereto as "Exhibit 7."

[19] *Id.*

[20] *See* Leases (Exs. 1-2) at ¶ 12.

29. After seeing that SRM was continuing its operations, Plaintiffs' counsel sent SRM additional written communications demanding that it cease and desist all mining operations. But as of June 27, 2025, SRM had refused to stop and continued to be present on the Property engaged in daily mining operations, which included, but was not limited to, digging and mining for sand and gravel, operating large trucks and heavy machinery, and loading barges. Prior to this time, Plaintiff had repeatedly demanded that SRM cease all such mining activities, but SRM repeatedly refused and continued said activities. As of today, SRM is still present on the Property and is continuing its mining activities.

30. Although the Leases required Plaintiffs to send all notices under the Leases to individuals associated with Bayou Materials, Plaintiffs knew that Bayou Materials was no longer the lessee under the Leases, and that an entity associated with SRM had assumed the Leases as lessee. Because Plaintiffs did not know the exact name or identity of the SRM-related entity that assumed the Leases as lessee, in March 2025, one of the Chastain Group Plaintiffs requested a copy of the Chastain Group Lease from SRM. In response, J.D. Kious, the General Counsel of "Smyrna Ready Mix Concrete, LLC," emailed this Plaintiff and attached the Chastain Group Lease with Bayou Materials and stated: "Per your request, please see attached a copy of your lease agreement for the Jackson, AL property." Mr. Kious' email signature showed that he was employed by "Smyrna Ready Mix Concrete, LLC." Neither Mr. Kious' email, nor the Lease that he attached, made any reference to "SRM Materials, LLC," nor did he mention or attach the Assignment, which would have referenced "SRM Materials, LLC" as the assignee. This communication led Plaintiffs to believe that the SRM-related entity who had assumed the Leases as lessee was "Smyrna Ready Mix Concrete, LLC."

31. Consequently, when Plaintiffs sent their letters to SRM, they referenced "Smyrna Ready Mix Concrete, LLC" as the lessee under the Leases because that is the SRM-related entity

that Plaintiffs believed was the lessee under the Leases. At that time, although the only notice provisions by which Plaintiffs were bound required them to send notice to Bayou Materials, Plaintiffs sent their initial May 16, 2025 letter that contained the notice of default, and all subsequent letters, to the following, all of which are executives and registered agents of both "Smyrna Ready Mix Concrete, LLC" and "SRM Materials, LLC":

a. J.D. Kious, Esq.
Smyrna Ready Mix Concrete, LLC
General Counsel
Via Email Only: jdkious@smyrnareadymix.com

b. Smyrna Ready Mix Concrete, LLC
c/o Northwest Registered Agent Service, Inc.
212 West Troy Street, Suite B
Dothan, Alabama 36303

c. Smyrna Ready Mix Concrete, LLC
c/o Agent Service I, Northwest
212 West Troy Street
Dothan, Alabama 36303-4455

d. Smyrna Ready Mix Concrete, LLC
1136 2nd Avenue North
Nashville, TN 37208

Letters from Plaintiffs were also emailed to the CEO and CFO of Smyrna Ready Mix Concrete, LLC, who are likely also the CEO and CFO of SRM Materials, LLC.

32. Although Plaintiffs were unaware of the Assignments and were not bound by the Assignment's notice provisions,[21] Plaintiffs nevertheless sent their May 16, 2025 letter providing notice of default to SRM to the appropriate addresses and individuals.

[21] As alleged earlier herein, Plaintiffs never signed the Assignments, nor had they ever even seen them prior to SRM's recent filing in this litigation. Moreover, in order for the Leases' notice provision to be validly modified by the Assignments, they would have had to be signed by both SRM and all Plaintiffs, but they were not.

a. The Assignments state that SRM's "address, as Lessee, for notices under the Lease shall be: SRM Materials, LLC, 1136 2nd Ave. North, Nashville, TN 37208."[22] Although Plaintiffs had never seen the Assignments as of the dates they sent their letters to SRM, Plaintiff ***nevertheless*** sent their letters to the address shown in the Assignments because it was listed as the "principal address" and "principal mailing address" of "Smyrna Ready Mix Concrete, LLC" in the Alabama Secretary of State's Business Entity Records.[23]

b. Plaintiffs also emailed their letters to SRM's General Counsel, CEO, and CFO, which was a valid method of notice under the Lease.[24]

c. Plaintiffs also sent their letters to the two registered agents of Smyrna Ready Mix Concrete, LLC (i.e., Northwest Registered Agent Service, Inc. and Agent Service I, Northwest), which are also the registered agents for SRM Materials, LLC.[25]

33. Actual notice was accomplished because, in response to Plaintiffs' May 16, 2025 letter, SRM promptly confirmed receipt and communicated with Plaintiffs about the issues raised in their letter on behalf of "SRM Materials, LLC," the lessee under the Leases.

a. On May 22, 2025, SRM's CEO and CFO emailed Plaintiffs' counsel and provided activity and financial data relating to sales made under the Leases and referred to the lessee under the Leases as "we" and "us," which means they were responding to Plaintiffs' May 16, 2025 letter on behalf of the lessee, SRM Materials, LLC. For example, in one email from

[22] *See* Assignments (Exs. 3-4) at ¶ 6 (emphasis added).

[23] *See* Exhibit 8.

[24] *See* Leases (Exs. 1-2) ¶ 20 (providing that email is acceptable method of giving notice under the Leases).

[25] *See* Exhibit 8 and Exhibit 9.

SRM's CEO, he stated: "We want to remain good tenants," obviously referring to the lessee under the Leases.[26]

b. When SRM's General Counsel, Mr. Kious, emailed his May 29, 2025 letter to Plaintiffs' counsel, he stated that it was "our formal response to your demand letter."[27] In his letter, he acknowledged receipt of Plaintiffs' May 16, 2025 letter, made various statements and arguments on behalf of "SRM Materials, LLC" in response to that letter, and concluded by signing his letter expressly on behalf of "SRM Materials, LLC," as follows:


Sincerely,
SRM MATERIALS, LLC,
*a subsidiary of Smyrna Ready Mix Concrete, LLC*

J.D. Kious
General Counsel

c. On June 12, 2025, SRM's General Counsel, Mr. Kious, emailed Plaintiffs' counsel and attached a second letter.[28] Like the first letter, this response opened by expressly stating it was being made on behalf of "SRM Materials, LLC" and closed with the same "SRM Materials, LLC" signature block.

d. These communications continued in this fashion until Plaintiffs terminated the Leases due to SRM's failure to cure their default. During these communications, SRM discussed factual details concerning the Leases and never made any assertion that Plaintiffs' notice of default was in any way deficient.

---

[26] These emails are attached hereto as "Exhibit 10."

[27] This email and letter are attached hereto as "Exhibit 11."

[28] This email and letter are attached hereto as "Exhibit 12."

34. When giving notices under the Leases, Plaintiffs were required to comply with the Leases' notice requirements. However, the Leases required Plaintiffs to send notices to Bayou Materials, which would have been useless since Bayou Materials is no longer a lessee under the Leases. Moreover, Plaintiffs were not required to comply with the notice provisions contained in the Assignments because Plaintiffs did not sign them. The Leases require all amendments and modifications to be in writing and signed by all parties, and because Plaintiffs did not sign the Assignments, they did not amend or modify the Leases and their terms are not binding on Plaintiffs. Consequently, because the Leases' notice requirements would have not accomplished actual notice to the current lessee, SRM, Plaintiffs were required to give actual notice to the lessee under the Leases, the exact identify of which Plaintiffs did not know at the time.

35. Plaintiffs complied with the Leases' notice requirements by emailing the notices to SRM's General Counsel, as well as to its CEO and CFO. Additionally, although the Assignments' notice provisions were not binding on Plaintiffs, Plaintiffs nevertheless substantially complied with those provisions by sending via email as noted above, but also by sending their notices to the correct address listed in the Assignments. Moreover, SRM's communications confirm that it received actual notice of all of Plaintiffs' notices. And by confirming receipt, responding to the notices, and communicating about the subjects of the notices (i.e., the defaults and termination) on behalf of SRM, SRM is equitably estopped from disputing Plaintiffs' notices and termination and has waived its right to do so.

## **Count One – Injunctive Relief**

36. Plaintiffs adopt the allegations in the preceding paragraphs as if fully restated herein.

37. Plaintiffs and SRM are parties to the Leases, which are valid contracts between the parties.

38. SRM breached the Leases by, among other things, failing to pay any rent or royalties for sand and gravel sold to trucks from the Property, and failing to pay rent and royalties based on "actual sales" as required by the Leases.

39. Pursuant to Paragraph 12 of the Leases, "[SRM] shall be in default if Lessee shall at any time fail to meet its obligations under the [Leases] and such failure shall continue for thirty (30) days after written notice to [SRM] … ." And if said default is not cured within the 30-day period, "then Lessor[s] shall have the right, but not the obligation, at its election, to terminate the [Leases] free from any claims of [SRM], and [SRM] shall remove any of its property thereon at its sole expense."

40. Plaintiffs provided written notice of the defaults to SRM on May 16, 2025.

41. SRM failed to cure its defaults within 30 days of Plaintiffs' notice of defaults.

42. On June 16, 2025, Plaintiffs provided written notice terminating the Leases to SRM.

43. Although the Leases have been terminated, SRM has returned to the Property and is continuing its mining operations as if the Leases are still in effect. Consequently, SRM is mining and selling sand and gravel belonging to Plaintiffs without any legal right to do so.

44. Plaintiffs request that this Court enter an injunction that prohibits SRM from engaging in any further mining operations on the Property.

45. If this injunction is not granted, Plaintiffs will suffer irreparable injury because, among other reasons, SRM will continue to trespass on Plaintiffs' property, create a nuisance on Plaintiffs' property, damage Plaintiffs' property by performing unauthorized mining operations on it, mine and sell sand and gravel belonging to Plaintiffs without any legal right to do so, sell Plaintiffs' minerals without sufficient weights and measures methods to properly weigh the quantities of materials (thereby disposing of materials in unknown quantities that cannot be ascertained after said disposition, thereby preventing Plaintiffs from having a monetary remedy),

expose Plaintiffs' to uninsured liability, and deprive Plaintiffs of the use, enjoyment, and ownership of their Property and minerals. Additionally, SRM has significantly increased its mining efforts and volume and is failing to properly maintain the property in safe condition and in compliance with the Lease and the applicable permitting and regulatory authorities, which poses a significant danger to Plaintiffs and others present on the Property. Specifically, SRM has failed, and continues to fail, to implement and maintain the proper stormwater management plan incompliance with the applicable law and permits, which has caused significant erosion and has created dangerous conditions that pose harm to Plaintiffs and their property.

46. The threatened injury to Plaintiffs outweigh any alleged harm the injunction may cause SRM.

47. Granting this injunction will not disserve the public interest.

WHEREFORE, Plaintiffs request that this Court enter an injunction that:

a. enjoins and strictly prohibits SRM and its employees from performing any mining operations whatsoever on the Property; and

b. enjoins and strictly prohibits SRM and its employees from entering, accessing, and/or being present on Plaintiff's property except for the limited purpose of removing its machinery and equipment.

**<u>Count Two – Declaratory Judgment regarding Termination of Lease</u>**

48. Plaintiffs adopt the allegations in the preceding paragraphs as if fully restated herein.

49. Plaintiffs and SRM are parties to the Leases, which are valid contracts between the parties.

50. SRM breached the Leases by, among other things, failing to pay any rent or royalties for sand and gravel sold to trucks from the Property, and failing to pay rent and royalties based on "actual sales" as required by the Leases.

51. Pursuant to Paragraph 12 of the Leases, "[SRM] shall be in default if Lessee shall at any time fail to meet its obligations under the [Leases] and such failure shall continue for thirty (30) days after written notice to [SRM] … ." And if said default is not cured within the 30-day period, "then Lessor[s] shall have the right, but not the obligation, at its election, to terminate the [Leases] free from any claims of [SRM], and [SRM] shall remove any of its property thereon at its sole expense."

52. Plaintiffs provided written notice of the defaults to SRM on May 16, 2025.

53. SRM failed to cure its defaults within 30 days of Plaintiffs' notice of defaults.

54. On June 16, 2025, Plaintiffs provided written notice terminating the Leases to SRM.

55. A justiciable controversy exists in that Plaintiffs terminated the Leases but SRM refuses to honor said termination and cease its mining operations.

WHEREFORE, Plaintiffs request that this Court enter judgment declaring that the Leases have been terminated and that, consequently, SRM must cease all mining operations on the Property and comply with all Lease provisions related to termination.

**Count Three – Declaratory Judgment regarding Payment of Rent and Royalties**

56. Plaintiffs adopt the allegations in the preceding paragraphs as if fully restated herein.

57. Plaintiffs and SRM are parties to the Leases, which are valid contracts between the parties.

58. The Leases require SRM to pay Plaintiffs rent and royalties in amounts equal to percentages "of the actual sales price of all Materials sold and delivered by Lessee in, at, from, or

arising out of the use of the Property, whether for wholesale, retail, cash, credit, trade-in, or otherwise … ."

59. However, SRM has failed to pay Plaintiffs rent and royalties in amounts equal to percentages "of the actual sales price of all Materials sold and delivered by Lessee in, at, from, or arising out of the use of the Property." Instead, in instances where SRM actually paid Plaintiffs, SRM has paid rent and royalties in amounts equal to percentages of the actual sales prices, minus millions of dollars of alleged and unsubstantiated expenses.

60. A justiciable controversy exists in that Plaintiffs and SRM have a dispute about the interpretation of the Leases – in particular, whether the Leases allow SRM to deduct alleged expenses from the actual sales price of Materials when calculating and paying rent and royalties to Plaintiffs.

WHEREFORE, Plaintiffs request that this Court enter judgment declaring that the Leases do not allow SRM to deduct alleged expenses from the actual sales price of Materials when calculating and paying rent and royalties to Plaintiffs.

**Count Four – Breach of Contract**

61. Plaintiffs adopt the allegations in the preceding paragraphs as if fully restated herein.

62. Plaintiffs and SRM are parties to the Leases, which are valid contracts between the parties.

63. SRM breached the Leases by, among other things, failing to pay rent or royalties for sand and gravel sales to trucks from the Property; failing to pay rent and royalties based on "actual sales" as required by the Leases; failing to provide each of the Plaintiffs with monthly statements each month showing the quantity of materials mined and sold and the rent and royalties calculations; failing to properly weigh materials mined and removed from the Property; failing to

furnish barge draft measurements and accurate equipment and procedures for determining the quantities of materials mined and removed from the Property; and failing to comply with all laws, regulations, and ordinances.

64. Plaintiffs provided written notice of the defaults to SRM on May 16, 2025, after which SRM failed to cure said defaults within 30 days.

65. On June 16, 2025, Plaintiffs provided written notice terminating the Leases to SRM, and when doing so, expressly reserved their rights to pursue their claims for SRM's failure to pay rent and royalties.

66. SRM's breach of the Leases has proximately caused Plaintiffs damages.

67. Under the Leases, SRM agreed to pay Plaintiffs an amount equal to all of their reasonable attorneys' fees and costs incurred related to any legal action brought by Plaintiffs against SRM to enforce the Leases or sue for their breach, including pre-litigation fees and costs, in the event Plaintiffs are the prevailing parties.

WHEREFORE, Plaintiffs demand judgment in their favor against SRM for all recoverable compensatory damages, consequential damages, and other damages, along with all recoverable prejudgment interest, attorneys' fees, and costs, and any and all other amounts and relief this Court or a jury finds to be just and proper.

**Count Five – Conversion**

68. Plaintiffs adopt the allegations in the preceding paragraphs as if fully restated herein.

69. SRM's right to be present on Plaintiffs' property and mine sand and gravel terminated on June 16, 2025, after which SRM had no legal right to perform any mining operations on the Property.

70. However, SRM continues to mine and sell sand and gravel belonging to Plaintiffs without any legal right to do so.

71. Additionally, SRM sold sand and gravel to trucks without disclosing the sales or paying Plaintiffs any rent or royalties therefor; underpaid for barge sales and kept proceeds that should have been paid over to Plaintiffs; and sold sand and gravel without using proper scales to measure the quantity.

72. The foregoing separate types of conduct by SRM constitutes a wrongful taking, a wrongful detention, an illegal assumption of ownership, and/or an illegal use – thereby committing multiple types of conversions.

73. SRM's conversion has proximately caused Plaintiffs damages.

74. In committing the actions alleged herein, SRM consciously and/or deliberately engaged in oppression, fraud, wantonness, and/or malice with regard to Plaintiffs, in that SRM intentionally took and detained the property with the intent to inflict damage on Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor against SRM for all recoverable compensatory damages, punitive damages, consequential damages, and other damages, along with all recoverable prejudgment interest, and any and all other amounts and relief this Court or a jury finds to be just and proper.

**Count Six – Fraudulent Misrepresentation**

75. Plaintiffs adopt the allegations in the preceding paragraphs as if fully restated herein.

76. When paying Plaintiffs rent and royalties under the Leases, SRM falsely represented to Plaintiffs that SRM sold sand and gravel for certain prices when, in fact, SRM sold the sand and gravel for much higher prices.

77. When making the payments each month, SRM misrepresented the sales prices in order to deceive Plaintiffs so they would believe the sales prices were lower than they were, and so SRM could pay rent and royalties for the false lower prices instead of the actual higher prices. SRM's misrepresentations were made through its employees, namely Wyatt Day, by sending spreadsheets via email that falsely claimed that sales were made for certain prices when, in reality, the prices were much higher.

78. SRM misrepresented the sales prices with the hope and expectation that Plaintiffs would rely on said misrepresentations.

79. Plaintiffs reasonably relied on SRM's representations of the sales prices, but those representations turned out to be false.

80. SRM's fraudulent misrepresentation proximately caused Plaintiffs to suffer damages.

WHEREFORE, Plaintiffs demand judgment in their favor against SRM for all recoverable compensatory damages, punitive damages, consequential damages, and other damages, along with all recoverable prejudgment interest, and any and all other amounts and relief this Court or a jury finds to be just and proper.

**Count Seven – Fraudulent Suppression**

81. Plaintiff adopts the allegations in the preceding paragraphs as if fully restated herein.

82. The Leases required SRM to pay rent and royalties to Plaintiffs in percentages of "the actual sales price" of all materials mined and sold pursuant to the Leases. The Leases further required SRM to provide monthly statements that revealed the quantity and sales prices of all materials mined and sold, as well as the rent and royalties calculations. Consequently, SRM had a duty to disclose the actual sales prices of all materials mined and sold.

83. As alleged above, when paying Plaintiffs rent and royalties under the Leases, SRM falsely represented to Plaintiffs that SRM sold sand and gravel for certain prices when, in fact, SRM sold the sand and gravel for much higher prices.

84. SRM fraudulently concealed and failed to disclose to Plaintiffs the fact that SRM had actually sold the sand and gravel at much higher prices.

85. SRM suppressed the actual sales prices in order to deceive Plaintiffs so they would believe the sales prices were lower than they were, and so SRM could pay rent and royalties for the false lower prices instead of the actual higher prices.

86. SRM suppressed the actual sales prices with the hope and expectation that Plaintiffs would rely on said misrepresentations.

87. Plaintiffs reasonably relied on SRM's suppression of the sales prices.

88. SRM's fraudulent suppression proximately caused Plaintiffs to suffer damages.

WHEREFORE, Plaintiffs demand judgment in their favor against SRM for all recoverable compensatory damages, punitive damages, consequential damages, and other damages, along with all recoverable prejudgment interest, and any and all other amounts and relief this Court or a jury finds to be just and proper.

**Count Eight – Trespass**

89. Plaintiff adopts the allegations in the preceding paragraphs as if fully restated herein.

90. SRM's right to be present on Plaintiffs' property and mine sand and gravel terminated on June 16, 2025, after which Plaintiffs were entitled to exclusive possession of the Property and SRM had no legal right to perform any mining operations on the Property.

91. However, SRM continues to enter upon and be present on the Property, dig in the ground of the Property, operate trucks and heavy machinery upon the Property, and mine and sell

sand and gravel belonging to Plaintiffs without any legal right to do so. Additionally, SRM's mining activities have caused, and continue to cause, massive holes and other dangerous conditions on the Property; excessive traffic, noise, vibration, light, and smells; and unsightly conditions on the Property.

92. SRM has engaged in civil trespass that has proximately caused Plaintiffs damages.

93. In committing the actions alleged herein, SRM consciously and/or deliberately engaged in oppression, fraud, wantonness, and/or malice with regard to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor against SRM for all recoverable compensatory damages, punitive damages, consequential damages, and other damages, along with all recoverable prejudgment interest, and any and all other amounts and relief this Court or a jury finds to be just and proper.

**Count Nine – Nuisance**

94. Plaintiff adopts the allegations in the preceding paragraphs as if fully restated herein.

95. SRM's right to be present on Plaintiffs' property and mine sand and gravel terminated on June 16, 2025, after which Plaintiffs were entitled to exclusive possession of the Property and SRM had no legal right to perform any mining operations on the Property.

96. However, SRM continues to enter upon and be present on the Property, dig in the ground of the Property, operate trucks and heavy machinery upon the Property, and mine and sell sand and gravel belonging to Plaintiffs without any legal right to do so.

97. SRM has created a nuisance that has proximately caused Plaintiffs damages. For example, SRM's mining activities have caused, and continue to cause, massive holes and other dangerous conditions on the Property; excessive traffic, noise, vibration, light, and smells; and unsightly conditions on the Property.

98. In committing the actions alleged herein, SRM consciously and/or deliberately engaged in oppression, fraud, wantonness, and/or malice with regard to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor against SRM for all recoverable compensatory damages, punitive damages, consequential damages, and other damages, along with all recoverable prejudgment interest, and any and all other amounts and relief this Court or a jury finds to be just and proper.

Respectfully submitted:

/s/ ***Matthew R. Jackson***

MATTHEW R. JACKSON (JAC108)
BLAKE T. RICHARDSON (RIC105)
*Attorneys for Plaintiffs*

**OF COUNSEL:**
ADAMS AND REESE LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36602
(Mailing: P.O. Box 1348, 36633)
(251) 433-3234 Main
(251) 438-7733 Fax
matt.jackson@arlaw.com
blake.richardson@arlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25th, 2025, I served a true and correct copy of this document on all counsel of record by filing same via the Court's CM/ECF system.

/s/ ***Matthew R. Jackson***

MATTHEW R. JACKSON